UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL HUERTA, Administrator,  )
Federal Aviation Administration  )
                                 )       No. 13 C 8529
                    Petitioner,  )
                                 )       Judge Norgle
              v.                 )
                                 )
SKYPAN INTERNATIONAL, Inc.,      )
                                 )
                   Respondent.   )

## FAA'S MEMORANDUM OF LAW IN RESPONSE
## TO RESPONDENT'S NOTICE OF SUPPLEMENTAL AUTHORITY

### Introduction

The FAA moved for summary enforcement of a document subpoena, properly served on

Skypan International, to which Skypan objected to producing documents regarding its operation

of an unmanned aircraft system (UAS) within the Class B airspace of New York and Chicago.[1]

Skypan now introduces supplemental authority regarding a *civil penalty* case against an operator

of a UAS in an attempt to bolster its argument that it should not have to respond to the subpoena.

Skypan's brief confuses the FAA's broad power to *investigate* with its more limited authority to

bring a civil enforcement action.  Even if the authority cited would apply as a defense to a future

enforcement action, neither this case nor any other cited by Skypan is a defense to failing to

respond to an administrative subpoena.

---

[1] The subpoena sought: (1) records concerning aerial photography of 440/432 Park Avenue, New York, New York; (2) materials relating to unmanned aerial systems in the New York Class-B airspace; (3) materials relating to UAS operated in the Chicago Class-B airspace. Skypan only produced documents concerning the first of the three subject areas.

## Discussion

The Federal Aviation Administration has broad authority to investigate any possible violation of regulation or issue that raises safety concerns in air commerce or air transportation. 49 U.S.C. § 40113. In this case the FAA is investigating Skypan's operation of an unmanned aircraft system (UAS) within the Class B airspace of New York and Chicago.[2] The operation of a UAS poses safety concerns within the congested airspace of these metropolitan areas. Courts have held that an administrative agency may investigate merely on suspicion that the law is being violated or even to assure that it is not. *Choa v. Local 743*, 467 F.3d 1014 (7th Cir. 2006), *United States v. Beacon Aerospace Corp.*, 2000 WL 92350, (D.Conn. Jan 11, 2000). *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995), *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (*quoting Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994)).

Skypan's notice of supplemental authority cites a National Transportation Safety Board (NTSB) administrative law judge's written order granting a motion to dismiss an FAA order assessing a *civil penalty* against an operator of a UAS. *Huerta v. Pirker*, Docket CP-217, Decisional Order ( March 6, 2014). Skypan argues that the ALJ's order stands for the proposition that FAA is without authority to issue and enforce its *subpoena* in this matter because the ALJ concluded that "no FAA rules or regulations exist in connection with the operation of Unmanned Aircraft Systems . . . ." Defendant's Notice of Supplemental Authority at 1. The Seventh Circuit has already rejected the type of argument defendant makes here, which

---

[2] Class B airspace is controlled airspace in which an operator must obtain a clearance from the air traffic control facility with jurisdiction over the area before operating an aircraft. Operations within Class B airspace must comply with specific requirements, including among other things, the installation of a two-way radio, an operating transponder, and automatic altitude reporting equipment on the aircraft, and the maintenance of two-way radio communications with the air traffic facility responsible for the airspace. See 14 C.F.R. § 91.131

confuses the Secretary's broad power to investigate with the more limited authority to bring a civil enforcement action. *Chao*, 467 F.3d 1014 at 1018 (7th Cir. 2006). The court here need not be concerned with whether the remedy of a hypothetical enforcement suit would properly rest; this case is about authority to *investigate*. *Id.*

Skypan's argument is without merit for a variety of other reasons. As an initial matter, the ALJ's order has been stayed by the FAA's filing on March 7 of an appeal of that order to the full NTSB. 49 C.F.R. § 821.43 ("The filing of a timely notice of appeal with the Board shall stay the effectiveness of the law judge's order . . . .") Furthermore, an ALJ's order is not binding precedent and the full NTSB has plenary authority to review the ALJ's decision, and because the issues on appeal are legal ones, its review is de novo. *Adm'r v. Smith*, NTSB Order No. EA-5646, 2013 WL 316198, at *4 (Jan. 16, 2013).

In any event, a significant distinction between the operation in *Pirker* and the operations by Skypan is that the *Pirker* matters occurred in October 2011 and the Skypan operations were largely after February 14, 2012.[3] That date is important because on that date the FAA Modernization and Reform Act of 2012 (the Act), Pub. L. 112-95, was enacted. Subtitle B of the Act addresses unmanned aircraft systems. If there was some doubt about the applicability of the FAA's rules to UAS operations before then, which the agency does not concede, Congress eliminated that doubt. As a threshold matter, the ALJ's conclusion that model aircraft are not aircraft as defined in 49 U.S.C. § 40103(a)(6)[4] and 14 C.F.R. § 1.1[5] is belied by the use of the

---

[3] The subpoena addressed to Skypan covers information related to operations between January 1, 2012 and August 1, 2013.

[4] 49 U.S.C. § 40103(a)(6) states that an "'aircraft means any contrivance invented, used, or designed to navigate, or fly in the air.'"

term "aircraft" in the current definition of unmanned aircraft and references to model aircraft. For example, "[t]he term 'unmanned aircraft" means an *aircraft* . . . " Pub. L. 112-95, section 331(8) (emphasis supplied) and, referring to a model aircraft, "the *aircraft* is operated in a manner that does not interfere with and gives way to any manned aircraft." Pub. L. 112-95, section 336(a)(4) (emphasis supplied).

A reading of Subtitle B makes it clear that Congress has directed the FAA to work toward the integration of unmanned aircraft into the national airspace system, something not generally permitted under the present regulatory scheme. Thus Congress required the FAA to develop a plan with specific recommendations on:

- How a rulemaking will define the acceptable standards for operation and certification of civil unmanned aircraft systems. Pub. L. 112-95, section 332(a)(2)(A)(i).

- The best methods to enhance the technologies and subsystems necessary to achieve the safe and routine operation of civil unmanned aircraft systems in the national airspace. Pub. L. 112-95, section 332(a)(2)(C).

- A phased-in approach to the integration of civil unmanned aircraft systems into the national airspace system. Pub. L. 112-95, section 332(a)(2)(B).

In no way does the Act suggest that UASs, including model aircraft, are currently free of all regulation.

---

[5] 14 C.F.R § 1.1 states that "aircraft means a device that is used or intended to be used for flight in the air."

Furthermore, the administrative decision on appeal in *Pirker* addresses what the ALJ referred to as "model aircraft" only. Following the Act of 2012, it is clear that the aircraft operated by Skypan are not model aircraft. The Act prohibits the FAA from adopting additional rules for model aircraft, provided they are operated under certain conditions. The Act defines "model aircraft" as an unmanned aircraft that is

1. capable of sustained flight in the atmosphere;

2. flown within visual line of sight of the person operating the aircraft; and

3. flown for hobby or recreational purposes.

Pub. L. 336(c).

It is doubtful that Skypan's operations are conducted for hobby or recreational purposes, but, at the very least, the FAA should be able to investigate Skypan's operations to determine the purpose and nature of the flights. Furthermore, Congress made clear the FAA Administrator's authority to take enforcement action against persons operating even model aircraft who endanger the safety of the national airspace system. Pub. L. 112-95, section 336(b). It is evident that Congress expects the FAA to be able to take action to enforce its current rules, the violation of which would endanger the safety of the national airspace.

As part of its ability to take enforcement action, whether against the operator of a model aircraft or any other UAS, the FAA must be able to conduct an investigation, which at times may require subpoenaing records and, if necessary, seeking enforcement of such subpoenas. The *Pirker* decision does nothing to undermine the FAA's authority to investigate and, if necessary, take enforcement action against, Skypan.

**Conclusion**

For the foregoing reasons, the *Pirker* decision does not establish that the FAA's investigation of Skypan exceeds its authority. Accordingly the court should compel Skypan to comply with the FAA subpoena immediately.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: s/ Katherine E. Beaumont
    KATHERINE E. BEAUMONT
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-7223
    katherine.beaumont@usdoj.gov

Of counsel:

ALFRED R. JOHNSON
Eastern Regional Counsel
Federal Aviation Administration
1 Aviation Plaza
Jamaica New York 11434